UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL BRIAN FORMAN,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF BROOKINGS; SETH BONNEMA, K9 Officer for the BPD in both individual and official capacities; UNKNOWN BROOKINGS POLICE DEPARTMENT OFFICERS 1-10, in their official and individual capacities; ROBERT PERRY, Secretary of The Department of Public Safety in his official and individual capacities; MOTHERS AGAINST DRUNK DRIVING, Non-profit corporation; and JANE &/OR JOHN DOES,<br><br>Defendants. | 4:25-CV-04010-ECS<br><br><br>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS FOR JUDICIAL NOTICE, GRANTING DEFENDANTS' MOTIONS TO DISMISS, AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

Plaintiff Michael Brian Forman filed a *pro se* civil rights lawsuit under 42 U.S.C. §§ 1983 and 1985. Doc. 1. The parties have filed several motions, which are currently pending before this Court. Docs. 7, 13, 15, 22, 30, 32, 35. Because Forman is proceeding *pro se*, this Court liberally construes his filings. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) ("A document filed *pro se* is to be liberally construed." (citation modified)).

I.      **Factual Background as Alleged by Forman**

At approximately 10:02 p.m., on July 21, 2022, Brookings Police Department ("BPD") K9 Officer Seth Bonnema executed a traffic stop of Forman's vehicle. Doc. 1 ¶¶ 11, 17. Officer Bonnema stopped Forman for crossing the white line at a stop sign. Id. ¶ 25. But Forman claims that the stop was illegal because it lacked probable cause because the stop sign did not have a

white line.  Id. ¶¶ 13, 17, 25; Doc. 1-1 at 1.  During the stop, Officer Bonnema asked Forman if he had "anything (alcohol) to drink," which Forman claims "unlawfully expand[ed] the already illegal investigation."[1]  Doc. 1 ¶ 28.  Forman alleges that Officer Bonnema's question about alcohol consumption is directly related to Mothers Against Drunk Driving ("MADD").  Id.; see also id. ¶¶ 21, 23 (alleging that MADD's actions as a state actor are in part responsible for Officer Bonnema's "unlawful detention" of Forman).

Forman further claims that MADD provides incentives and awards to police officers in South Dakota to encourage arresting individuals for driving under the influence ("DUI"), but the awards are based on arrests, not valid convictions.  Id. ¶¶ 12, 15–16, 26.  "These incentives are award pins encouraging [officers] to arrest over ONE-HUNDRED & FIFTY individuals for the top prize."  Id. ¶ 15 (footnote omitted).  Forman claims that "MADD is involved in a conspiracy with law enforcement all over the state; in an effort to arrest anyone for DUI regardless of any laws being broken.  In violation of 42 U.S. Code § 1985."  Id. ¶ 6 n.1 (emphasis omitted); see also id. ¶ 12 ("In this case Bonnema, the City of Brookings, the state itself & MADD are connected.").  He alleges that this conspiracy involves the South Dakota Department of Public Safety ("SDDPS") through the distribution of grant funds in which MADD is heavily entangled,[2] and SDDPS Secretary Robert Perry is "guilty by association . . . based on his association with

---

[1] On December 6, 2023, Forman filed a lawsuit against Officer Bonnema and the City of Brookings in the United States District Court for the District of South Dakota (Forman v. South Dakota DCI, 4:23-CV-04208-ECS (D.S.D.)), due to the conduct during the stop.  Doc. 1 ¶ 11 & n.2.

[2] Forman alleges that MADD is "guilty of fraud, misuse, & abuse of federal grant funds."  Doc. 1 ¶ 29.  Part of the alleged fraud occurred because MADD has its "nose in all DPS law enforcement meeting affairs" and "grant training workshops."  Id. ¶¶ 29, 37.  Forman also claims that MADD publishes inaccurate science and false statistics as "a pre-text to arrest more people for their own gain."  Id. ¶ 31.  He claims that MADD might as well be considered a joint organization with the National Highway Traffic Safety Administration but clarifies that this case should not be considered an action under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).  Id. ¶¶ 30, 31 n.11.

2

MADD, the City of Brookings & Seth Bonnema." Id. ¶ 14; see also id. ¶¶ 20–21 (alleging that MADD's lobbying efforts benefit the BPD and federal grant funding is funneled through the state, which causes "significant financial integration" between MADD, the City of Brookings, and the State of South Dakota).

Forman claims that Officer Bonnema "received rewards from the state Insurance tax payer pool in 2023, then by MADD in 2024." Id. ¶ 27 n.8. The "South Dakota Municipal League's Police Chief's & Sheriff Association" gifted the 2023 award, but Forman claims the award "basically" came from the South Dakota Public Assurance Alliance taxpayer insurance pool. Id. ¶ 33 & n.12. In 2023, Officer Bonnema arrested thirty people for DUI, which resulted in him receiving a bronze pin for top DUI enforcement from MADD in 2024.[3] Id. ¶¶ 12, 17, 23. However, Forman "asserts out of the thirty arrests Bonnema committed during the year of 2023, some were suppressed & or dismissed. Many more should have been dismissed but the local political climate of Brookings is to cover for the police officer's actions at every turn." Id. ¶ 18. Forman claims that the MADD incentives caused BPD to develop an unofficial policy or custom of allowing officers to "lie & illegally detain individuals in an effort to increase their DUI & traffic enforcement statistics further causing abuse of tax-payer funded grants." Id. ¶ 13; see also id. ¶ 18 ("MADD entices police officers to commit unlawful traffic stops & act in other unconstitutional manners."). He also claims that the City of Brookings has allowed officers to use their badge for personal gain and to target individuals in the community that the officers do not like. Id. ¶ 13.

---

[3] In 2024, BPD Officer Robert Bowden also received the bronze pin, but Forman has not named Officer Bowden as a defendant nor alleged any facts indicating any interactions with Officer Bowden prior to filing his Complaint. See Doc. 1 ¶¶ 16, 23, 25; Doc. 1-1 at 2.

BPD officers allegedly targeted Forman when he was stopped in 2022 and again targeted him on other occasions. Cf. id. ¶ 13; id. ¶¶ 38–43. Although Forman does not allege when this occurred, he claims that around two or three in the morning, he was transported to the hospital because he was intoxicated and "passed out" in the snow, and BPD officers came to the hospital and beat him up. Id. ¶ 38. Forman also alleges that on June 10, 2023, a BPD officer waited outside of a bar for Forman to leave because the officer recognized Forman's vehicle. Id. ¶ 41. During the following weekend, Forman again parked his vehicle outside the bar, and four BPD officers were parked around the area and were staring at Forman's vehicle. Id. When Forman left the bar, multiple officers followed him for several blocks. Id. The next weekend, Forman again parked his pickup outside the bar, and officers followed him when he left. Id. ¶ 43. Forman claims that he was sober during the three incidents in June of 2023 and BPD officers were targeting and harassing him under BPD policy. Id. ¶¶ 42–43.

## II.     Motions for Judicial Notice (Docs. 13, 30, and 35)

Forman has filed three motions requesting that this Court take judicial notice of "adjudicative facts" under Rule 201 of the Federal Rules of Evidence. Docs. 13, 30, 35. In Forman's first motion for judicial notice, he requests that this Court take judicial notice of a criminal case from a state court in South Dakota involving Defendant Seth Bonnema and an article on the MADD website, titled "Fair and Equitable Traffic Safety Enforcement." Doc. 13 at 1–2; Doc. 13-1. In his second motion for judicial notice, he requests that this Court take judicial notice of information related to funding received by the BPD, information about BPD's attempts to receive Commission on Accreditation for Law Enforcement Agencies certification, and a South Dakota Public Broadcasting article, titled "Study: South Dakota has highest per capita DUI arrest rate in nation." Doc. 30 at 1–2; Doc. 30-1. In the third motion for judicial

notice, Forman requests that this Court take judicial notice of BPD's policy and information

relating to an allegedly unlawful traffic stop performed by the BPD. Doc. 35 at 1–3; Docs. 35-1,

35-2. Defendants City of Brookings and Officer Bonnema oppose Forman's second and third

requests for judicial notice, Doc. 36, and Defendants Secretary Perry and MADD join in the

opposition, Docs. 37 and 39.[4]

Currently pending before this Court are Defendants' motions to dismiss. Docs. 7, 22, 32.

When ruling on motions to dismiss, courts are ordinarily limited to the allegations in the

complaint, but courts may consider other information if it is necessarily embraced by the

pleading or information subject to judicial notice. Kloss v. Argent Tr. Co., No. 23-cv-0301,

2023 WL 8603131, at *2 (D. Minn. Dec. 12, 2023) (citing Levy v. Ohl, 477 F.3d 988, 991 (8th

Cir. 2007) and Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003)).

In Forman's three motions for judicial notice, he states that his "**motion is cross-

incorporated with [his] complaint.**" Doc. 13 at 2; Doc. 30 at 2; Doc. 35 at 2. Because this

Court must liberally construe *pro se* filings, this Court liberally reads Forman's motions for

judicial notice to also be motions to supplement his Complaint. Under Rule 15 of the Federal

Rules of Civil Procedure, "[o]n motion and reasonable notice, the court may, on just terms,

permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event

that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). On

February 28, 2025, this Court amended its Local Rules to require that "any party moving to

amend or supplement a pleading must attach a copy of the proposed amended pleading to its

---

[4] Secretary Perry and MADD join in the City of Brookings and Officer Bonnema's opposition to
Forman's first, second, and third motions for judicial notice. See Docs. 37, 39. But the City of Brookings
and Officer Bonnema do not oppose Forman's first motion. See Doc. 36. In the City of Brookings and
Officer Bonnema's brief in opposition to Forman's motion for preliminary injunction, they stated
"Defendants do not oppose Forman's motion [Doc. 13], but note that the MADD article is not subject to
judicial notice." Doc. 26 at 1 n.1.

motion to amend with the proposed changes highlighted or underlined so that they may be easily identified." [5] D.S.D. Civ. LR 15.1.

This Court will consider whether the documents are proper supplements to Forman's Complaint. Docs. 30 and 35 were filed after this Court amended its Local Rules, and he did not include a supplemental complaint including these facts that complied with the amended Local Rules. Thus, this Court does not consider the documents attached to Docs. 30 and 35 as supplements to the Complaint and will only consider whether the information is subject to judicial notice. Because Doc. 13 was filed before the Local Rules were amended, this Court considers whether the exhibits to Doc. 13 can supplement his Complaint. The documents related to a state criminal case not involving Forman are dated 2022 and 2023 and occurred before his Complaint was filed. Doc. 13-1 at 1–9. As to the MADD article that Forman submits with his motion, he has not properly alleged any facts related to the article, nor has he alleged anything indicating that the article was a "transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).[6] Thus, Forman's request to supplement his Complaint, Docs. 13, 30, and 35, are denied, but this Court considers whether it is appropriate to take judicial notice of the documents Forman submitted with his motions.

Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot

---

[5] See United States District Court District of South Dakota, Civil Local Rules of Practice (Redlined), https://www.sdd.uscourts.gov/sites/sdd/files/Civil%20Local%20Rules%20-%20Redlined%2C%20 approved.pdf [https://perma.cc/J85JV73L].

[6] On February 2, 2025, Forman also filed a motion for preliminary injunction that he claims is "cross-incorporated" with his Complaint. Doc. 15 at 2 (emphasis omitted). If this Court were also to construe this as a motion to supplement his Complaint, his request would fail because Forman does not allege any transactions, occurrences, or events that occurred after the filing of his Complaint. See generally id.

reasonably be questioned." Fed. R. Evid. 201(b). However, under Rule 201, a court may take judicial notice of "an adjudicative fact only, not a legislative fact." Fed. R. Evid. 201(a). "Adjudicative facts are 'facts that normally go to the jury in a jury case. They relate to the parties, their activities, their properties, their businesses." Qualley v. Clo-Tex Int'l, Inc., 212 F.3d 1123, 1128 (8th Cir. 2000) (quoting Fed. R. Evid. 201 advisory committee's notes on proposed rule). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). But judicial notice does not permit admission of evidence that is "in contravention of the relevancy, foundation, and hearsay rules." Am. Prairie Constr. Co. v. Hoich, 560 F.3d 780, 797 (8th Cir. 2009).

## A.    State Court Cases

Forman requests that this Court take judicial notice of two state court cases: South Dakota v. Nielson (05CRI22-507) and South Dakota v. Thomas (05CRI23-594). Docs. 13, 13-1, 35, 35-1. He alleges that both of these cases show illegal traffic stops and arrests by BPD officers, which he claims shows an unofficial policy or custom of the City of Brookings. Doc. 13 at 2; Doc. 35 at 3. The Eighth Circuit has held that Rule 201(b) allows courts "to take judicial notice of public documents for the purpose of noting undisputed adjudicative facts, but judicial notice is inappropriate to the extent [one party] offers these documents for the 'truth of the matters within them and inferences to be drawn from them—matters which [the opposing party] disputes.'" Insulate SB, Inc. v. Advanced Finishing Sys., 797 F.3d 538, 543 n.4 (8th Cir. 2015) (quoting Kushner v. Beverly Enters., 317 F.3d 820, 832 (8th Cir. 2003)). In Insulate SB, Inc., the Eighth Circuit determined that it was appropriate to take judicial notice of "the existence of and basic facts surrounding" other cases and documents that had been filed in public court

records but declined "to consider the documents as evidence" that the party engaged in any wrongful conduct alleged therein. Id.

Here, Forman attempts to argue that the two state court cases are relevant to show a pattern or practice of the BPD to execute illegal stops and arrests for DUI. Doc. 13 at 1–2; Doc. 35 at 1–3. Forman claims that Nielson was "a South Dakota criminal case that was dismissed because Bonnema commenced an illegal traffic stop & arrested the individual for DUI" in Brookings County, and the stop occurred two days after Officer Bonnema stopped Forman. Doc. 13 at 2. Forman alleges that Thomas was a state criminal case in Brookings County involving a different officer, in which the prosecutor "knew the stop was illegal and dismissed it before a judge would call out the BPD for more bad stops." Doc. 35-1 at 6; see also Doc. 35 at 1–3; Doc. 35-1 at 1–6. To the extent that Forman requests that this Court take judicial notice of the basic facts and existence of these cases, his motions for judicial notice, Docs. 13 and 35, are granted for this limited purpose. Although the evidence may be relevant to show an unconstitutional policy or custom, Forman cannot use these cases to show Officer Bonnema's propensity to initiate traffic stops without reasonable suspicion under Federal Rule of Evidence 404(a)(1) and (b)(1).

## B.    Articles

Forman requests that this Court take judicial notice of an article on the MADD website and a South Dakota Public Broadcasting ("SDPB") article, which contains statements by a community engagement manager of a local MADD chapter. Doc. 13 at 1–2; Doc. 13-1 at 10–13; Doc. 30 at 1–2; Doc. 30-1 at 7–8. Defendants "note that the MADD article is not subject to judicial notice" because the facts are not generally known within the trial court's territorial jurisdiction, nor can the facts be accurately and readily determined from sources whose

authenticity cannot reasonably be questioned.  Doc. 26 at 1 n.1.  Defendants argue that judicial notice can be taken of the SDPB article's existence but not for the truth of the matters asserted therein.  Doc. 36 at 5.

"Courts may properly take judicial notice of newspapers and other publications as evidence of what was in the public realm at the time, but not as evidence that the contents in the publication were accurate."  Barron v. South Dakota, No. CIV. 09-4111, 2010 WL 9524819, at *3 (D.S.D. Sept. 30, 2010) (citations omitted).  "Unless the articles contain matter that has not been disputed or that has been presented in other admissible evidence, the articles which Plaintiffs have requested this Court to take judicial notice, will be considered only for the limited purpose of what was in the public realm at the time."  Id. (citation modified).  Thus, this Court will take judicial notice of the articles to establish what was in the public realm at the time. Further, this Court will take judicial notice of relevant statements (if any statements are relevant) by MADD included in the article to the extent that MADD does not challenge the accuracy of the statements.  See United States ex rel. Marchese v. Cell Therapeutics, Inc., No. C06-168MJP, 2007 WL 2572347, at *2 (W.D. Wash. Sept. 6, 2007) ("Because Mr. Winn is a counsel of record in this case, press statements attributed to him regarding this case are capable of accurate and ready determine by resort to Mr. Winn himself, who has not challenged the accuracy of his statements in the article.").

### C.    Information Related to Funding Received by the BPD

Forman requests that this Court take judicial notice of various funding and grants from the National Highway Traffic Safety Administration ("NHTSA") that were distributed through the SDDPS Office of Highway Safety to the BPD and other police and sheriff departments in South Dakota.  Doc. 30 at 1–2; Doc. 30-1 at 1–6.  He submitted six pages of documents showing

9

that the BPD receives funding for law enforcement activities.  Doc. 30-1 at 1–6.  He seeks to use this information to establish that "BPD is indeed receiving funds for DUI enforcement, overtime pay & other traffic related matters."  Doc. 31 at 2.  He alleges that "the BPD is receiving NHTSA funding from multiple sourced grants & that one can't publicly access BPD's specific grant stats" and "[i]f the Brookings defendant's [sic] have nothing to hide they should file all their NHTSA grant applications from the past decade in this very court."  Id. at 2–3.

Defendants do not dispute that the BPD received grant funding.  Doc. 36 at 4.  Thus, because it is undisputed and clearly determinable from the documents, this Court takes judicial notice that the BPD received funding.

However, this Court does not take judicial notice that the BPD encouraged illegal traffic stops to procure fraudulent funding because such fact is disputed.  Further, the documents that Forman submitted appear to be incomplete records or non-sequential pages about grant funding provided to police departments and sheriff offices in South Dakota.  Doc. 30-1 at 1–6.  Although the top of the documents lists the South Dakota Office of Highway Safety, documents with unexplained exclusion of pages (or even pages from potentially different documents) and Forman's failure to identify the original source of the documents, do not provide facts that can accurately be determined to show that the BPD had incentives to encourage illegal traffic stops to procure fraudulent funding.[7]  Id.  Thus, to the extent that Forman requests that this Court take judicial notice that the BPD has encouraged illegal traffic stops to fraudulently receive federal funding is denied.

---

[7] Further, it is unclear from the documents included what years the grant information relates to.  See Doc. 30-1 at 1–6.  While this Court could assume that the Project Agreement Numbers beginning with 2025 indicate that the funding has been or will be issued in 2025, that information is not clearly alleged or described in the filings.

**D.    Commission on Accreditation for Law Enforcement Agencies Certification**

Forman requests that this Court take judicial notice of a webpage on the City of Brookings's website about the BPD seeking a certification from the Commission on Accreditation for Law Enforcement Agencies ("CALEA"). Doc. 30 at 1–2; Doc. 30-1 at 9–10. Forman speculates that his "civil actions since December 2023 to present day; might be the only thing preventing the BPD from obtaining this CALEA certification." Doc. 31 ¶ 4. Forman "ask[s] the court to consider whether they really think the BPD is worthy of this certification from CALEA." Id.

Defendants oppose Forman's request because "the City of Brookings's certification from a third party is not at issue in this case, and it is unclear how the certification relates to Forman's claims of fraud." Doc. 36 at 5. Continuing, Defendants state, "[t]he CALEA certification appears to be tangentially related to Forman's case, at best, and is therefore not the type of fact that is properly subject to judicial notice." Id. Forman did not reply to Defendants' response.

Here, this Court agrees with Defendants' argument that Forman has not shown that the two pages that he submitted about CALEA certification are relevant to his claims against the Defendants. Forman submitted information about the BPD working toward CALEA accreditation by reducing liability and risk exposure and relentlessly pursuing excellence, among other things. Doc. 30-1 at 9–10. However, Forman has not alleged any facts showing that the BPD did not receive CALEA certification because of his lawsuit. See generally Doc. 31. Forman's mere speculation about the BPD's accreditation process is insufficient to show relevancy to his claims. Thus, Forman's motion for this Court to take judicial notice of a webpage about BDP's CALEA application process, Doc. 30, is denied.

### E.    BPD's Policy

Forman requests that this Court take judicial notice of the BPD's Policy 100-04

"Constitutional Requirements-Stop, Arrest & Search of Persons."  Doc. 35-2; see also Doc. 35 at

1–3.  Forman submits two BPD policy pages that contain definitions, and he handwrote on the

document, "they don't follow their own policy manual."  Doc. 35-2 at 1.  Defendants oppose

judicial notice because

> the excerpted policy manual does not establish that it is "beyond dispute" that the
> City of Brookings Police Department fails to follow its own policies.  The excerpted
> pages merely contain definitions of different terms, which does not establish that
> the Brookings Police Department fails to follow its policies.  The City of Brookings
> disputes Forman's contentions about the policy manual.

Doc. 36 at 7–8.

To the extent that Forman asks this Court to take judicial notice that the documents

contain definitions that the BPD uses for specific terms, this Court grants that request because

the City of Brookings and Officer Bonnema do not dispute that these definitions are included as

written in the BPD policies.  However, this Court denies Forman's request to use these policies

to establish that BPD fails to follow its policies because such fact is disputed.  See Fed. R. Evid.

201(b) (noting that courts may take judicial notice of facts that are "not subject to reasonable

dispute"); N. Oil & Gas, Inc. v. EOG Res., Inc., 970 F.3d 889, 895 n.6 (8th Cir. 2020)

("'[J]udicial notice is inappropriate' when documents are offered 'for the truth of the matters

within them and inferences to be drawn from them' and the opposing party disputes those

matters." (alteration in original) (quoting Insulate SB, Inc., 797 F.3d at 543 n.4)).

### F.    Facts in Forman's Response to the City of Brookings and Officer Bonnema's
    Motion to Dismiss

In Forman's response to the City of Brookings and Officer Bonnema's motion to dismiss,

Forman requests that this Court "take judicial notice under Fed. Rule 201.(b)(2) that Bonnema

12

asked Forman what he had consumed for alcohol during the stop & take notice that the defense

has not produced any valid objective justification of Bonnema's traffic stop." Doc. 25 at 20.

Courts have considered factual allegations included in a *pro se* plaintiff's responsive brief

when ruling on a motion to dismiss. See Ngam v. Kludt, No. 1:24-CV-01025-ECS, 2025 WL

2636587, at *1 n.1. (D.S.D. Sept. 12, 2025) (collecting cases). Because these facts appear to be

disputed, this Court denies Forman's request for judicial notice at this time. However, because

Forman is *pro se* and is the non-moving party, to the extent that he does not assert any legal

conclusions, this Court will consider these facts, and assume they are true under the relevant

standard, when ruling on the Defendants' motion to dismiss.

## III.    Motions to Dismiss (Docs. 7, 22, and 32)

### A.    Secretary Perry's Motion to Dismiss (Doc. 7)

Forman sues Secretary Perry in his individual and official capacities. Doc. 1 ¶ 5.

Forman sues Secretary Perry because "[t]he South Dakota Department of Public Safety & their

Highway Safety subdivision is responsible for distributing the grant funds throughout the state &

to the City of Brookings PD." Id. ¶ 14; see also id. ¶ 20 ("MADD lobbies & puts pressure on

federal bodies such as the United States Department of Transportation & the National Highway

Traffic Safety Administration. There are also grants on a state level as well but the federal grant

money is funneled through the state. Specifically the South Dakota Department of Public

Safety's subdivision of Highway Safety."). He also claims that "MADD is heavily entangled

with the DPS & Robert Perry is guilty by association; based on his association with MADD, the

City of Brookings & Seth Bonnema." Id. ¶ 14. Thus, this Court liberally construes Forman's

Complaint to allege against Secretary Perry claims for civil conspiracy to violate his Fourth and

Fourteenth Amendment rights. See generally id. He also claims that "MADD, State of South

Dakota, & City of Brookings PD is engaged in fraud, misuse, & abuse of taxpayer funded federal & state grants." Id. at 13 (emphasis omitted).

Secretary Perry moves to dismiss Forman's Complaint under Federal Rule of Civil Procedure 12(b)(6) because (1) the Complaint fails to state a viable claim upon which relief could be granted against Secretary Perry, (2) Forman lacks standing to pursue claims asserted in his Complaint against Secretary Perry, and (3) Forman's claims are barred by the public duty doctrine. Doc. 7. Because standing is jurisdictional, this Court first considers standing. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 340 (2006). Although courts have held that motions to dismiss for standing are generally properly raised as Rule 12(b)(1) motions because standing is a challenge to subject matter jurisdiction, see Sayles v. BSI Fin. Servs., No. 4:15-CV-612 (CEJ), 2016 WL 304541, at *2 (E.D. Mo. Jan. 25, 2016); Becker v. Portfolio Recovery Assocs., LLC, Case No. 20-cv-00791 (SRN/KMM), 2020 WL 5366386, at *2 (D. Minn. Sept. 8, 2020), courts are "obliged to examine standing *sua sponte*" because standing is part of federal courts' jurisdictional requirement under Article III of the Constitution. Meuir v. Greene Cnty. Jail Emps., 487 F.3d 1115, 1119 (8th Cir. 2007) (citation omitted). See also Medalie v. Bayer Corp., 510 F.3d 828, 829 (8th Cir. 2007) ("Standing is a threshold inquiry and jurisdictional prerequisite that must be resolved before reaching the merits of a suit." (citation modified)).

Further, "[t]he standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) applies equally to a motion to dismiss for lack of subject matter jurisdiction that, like here, asserts a facial challenge under Rule 12(b)(1)," Turner v. Mallinckrodt Inc., No. 4:24-CV-244 HEA, 2024 WL 3693227, at *2 (E.D. Mo. Aug. 7, 2024) (collecting cases). A facial challenge to jurisdiction only requires "the court to examine the complaint and determine if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction." Middlebrooks v. United States, 8 F.

14

Supp. 3d 1169, 1173 (D.S.D. 2014) (citing Osborn v. United States, 918 F.2d 724, 729 n.6 (8th

Cir. 1990)). Here, Secretary Perry appears to allege a facial challenge to standing because

"Forman's complaint as it relates to allegations against Perry (the principal allegation being

'guilt by association' with MADD and the Brookings Police Department) satisfy none of the

[standing] requirements." Doc. 8 at 5. Thus, regardless of whether this Court considers

Secretary Perry's challenge to standing under Rule 12(b)(1) or Rule 12(b)(6), the same standard

applies in this instance.

### 1.    Rule 12(b)(6) Standard

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Id. (citing Twombly, 550 U.S. at 556). On a motion to dismiss under Rule 12(b)(6),

"[c]ourts must accept a plaintiff's factual allegations as true" and construe all reasonable

inferences in the plaintiff's favor "but need not accept a plaintiff's legal conclusions." Retro

Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012)

(citing Ashcroft, 556 U.S. at 678; E-Shops Corp. v. U.S. Bank Nat'l Ass'n, 678 F.3d 659, 662

(8th Cir. 2012)). When ruling on a Rule 12(b)(6) motion, a court generally must ignore materials

outside the pleadings, but it may consider "matters incorporated by reference or integral to the

claim, items subject to judicial notice, matters of public record, orders, items appearing in the

record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."

Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (quoting Miller v. Redwood

Toxicology Lab, Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012)).

### 2.    Standing

"Standing requires (1) an injury in fact (2) fairly traceable to the defendant's actions and

(3) likely to be redressed by a favorable decision." Curtis Lumber Co. v. La. Pac. Corp., 618

F.3d 762, 770 (8th Cir. 2010) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).

Defendant Secretary Perry argues that "Forman's complaint as it relates to the allegations against

[him] (the principal allegation being 'guilt by association' with MADD and the Brookings Police

Department) satisfy none of the requirements." Doc. 8 at 5.  In Forman's response to Secretary

Perry's motion to dismiss, he generally rejects Secretary Perry's arguments, but Forman does not

specifically address Secretary Perry's argument for lack of standing. See generally Doc. 12.

### a.    Claims for Civil Conspiracy

This Court first considers whether Forman suffered an injury in fact.  An injury in fact is

"an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual

or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal citations

omitted).  Here, Forman does not claim that he was *arrested* because of the SDDPS's policy, but

he does claim that he was *pulled over* due to the alleged incentive program.  Doc. 1 ¶¶ 13, 17, 25.

A traffic stop is a seizure under the Fourth Amendment.  Mich. Dep't of State Police v. Sitz, 496

U.S. 444, 450 (1990) (citation omitted); United States v. Green, No. 18-CR-2006-LRR, 2018

WL 1947419, at *3 (N.D. Iowa Apr. 25, 2018) (citing Whren v. United States, 517 U.S. 806,

809–10 (1996)).  Thus, liberally construing Forman's complaint, he has alleged that he suffered

an injury of an illegal seizure because of the BPD's DUI policy and MADD's incentive program.

"The second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.'" <u>Food & Drug Admin. v. All for Hippocratic Med.</u>, 602 U.S. 367, 380 (2024) (citation omitted). "Under Article III, the plaintiff must show 'a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" <u>F.B. v. Our Lady of Lourdes Par. & Sch.</u>, 125 F.4th 898, 903 (8th Cir. 2025) (quoting <u>Arc of Iowa v. Reynolds</u>, 94 F.4th 707, 711 (8th Cir. 2024)). "Traceability . . . requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm. That connection cannot be overly attenuated." <u>Crain v. Crain</u>, 72 F.4th 269, 278 (8th Cir. 2023) (alteration in original) (quoting <u>Agred Found. v. U.S. Army Corps of Eng'rs</u>, 3 F.4th 1069, 1073 (8th Cir. 2021)). "Redressability requires us to examine the 'causal connection between the alleged injury and the judicial relief requested. The redressability inquiry focuses on whether the *injury* that a plaintiff alleges is likely to be redressed through the litigation." <u>Pharm. Rsch. & Mfrs. of Am. v. Williams</u>, 64 F.4th 932, 940 (8th Cir. 2023) (citation modified).

Here, Forman has generally stated that Officer "Bonnema, the City of Brookings, the state itself & MADD are connected." Doc. 1 ¶ 12; <u>see also</u> <u>id.</u> ¶¶ 15, 23, 37. "The South Dakota Department of Public Safety & their Highway Safety subdivision is responsible for distributing the grant funds throughout the state & to the City of Brookings PD." <u>Id.</u> ¶ 14; <u>see also</u> <u>id.</u> ¶ 20. "MADD is heavily entangled with the DPS & Robert Perry is guilty by association; based on his association with MADD, the City of Brookings & Seth Bonnema." <u>Id.</u> ¶ 14; <u>see also</u> <u>id.</u> ¶ 20 ("MADD lobbies & puts pressure on federal bodies such as the United States Department of Transportation & the National Highway Traffic Safety Administration. There are also grants on

a state level as well but the federal grant money is funneled through the state. Specifically the

South Dakota Department of Public Safety's subdivision of Highway Safety."). "MADD is

engaged in fraud in multiple ways, they have their nose in all DPS law enforcement meeting

affairs sending their representatives for planning & meetings. . . . MADD has joined law

enforcement in South Dakota for 'grant training workshops'." Id. ¶ 29.

　　　　Forman's general allegations that Secretary Perry and SDDPS are entangled with MADD

and the City of Brookings or that these organizations work together with grant training

workshops are insufficient to show a causal connection. Forman claims that SDDPS is involved

with *distributing* grant funding, but he has not clearly alleged that the SDDPS is responsible for

*deciding* which police departments receive the funding and what criteria is considered for

awarding funds, which he claims caused Officer Bonnema to illegally stop his vehicle. See

generally Doc. 1. But even if Forman had alleged that SDDPS was involved with deciding

which police departments received grant funding, Forman has not alleged a causal connection

directly between Secretary Perry and the alleged injury in fact. Forman claims that Secretary

Perry is guilty by association. Doc. 1 ¶ 14. Forman's vague claim of guilt by association is

insufficient to show that Secretary Perry was personally involved with and caused the alleged

injury in fact. In Forman's response to Secretary Perry's Motion to Dismiss, Forman stated that

"Perry definitely has some say in how these matters are handled; especially when taxpayer funds

are on the line." Doc. 12 ¶ 3. Forman also claims that Secretary Perry is "guilty of hosting a

springboard for MADD & the City of Brookings PD. [Forman] . . . argue[s] that [Secretary

Perry] is liable in his individual capacity as well for putting a blind eye to MADD's usurpation.

As well has [sic] being liable for allowing corruption to run; traceable back to his office." [8] Id.

---

[8] In Forman's Complaint, he states "[l]et's stop allowing corrupted taxpayer funds to enrich corrupt
officials in the State of South Dakota, let the economy thrive." Doc. 1 at 15 (capitalization, emphasis, and

¶ 5. But Forman does not allege any facts indicating how Secretary Perry is involved with the distribution of grant funds or the alleged conspiracy or how any alleged acts by Secretary Perry had caused his allegedly illegal traffic stop in 2022. Thus, Forman has not alleged sufficient facts for this Court to have standing over his claims against Secretary Perry for monetary damages.[9]

"In the case of complaints for injunctive relief, the 'injury in fact' element of standing requires a showing that the plaintiff faces a threat of ongoing or future harm." Park v. Forest Serv. of the U.S., 205 F.3d 1034, 1037 (8th Cir. 2000). Because "past wrongs do not in themselves amount to [the] real and immediate threat of injury necessary to make out a [live] case or controversy" for injunctive relief, City of Los Angeles v. Lyons, 461 U.S. 95, 103 (1983), the plaintiff must show "the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law," O'Shea v. Littleton, 414 U.S. 488, 502 (1974). In Lyons, a case claiming police used excessive force, the Court held that to establish an actual controversy for injunctive relief, the plaintiff

> would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation, or for questioning or, (2) that the City ordered or authorized police officers to act in such manner.

461 U.S. at 105–06. "When a plaintiff is seeking injunctive relief, 'the "injury in fact" element of standing requires a showing that the plaintiff faces a threat of ongoing or future harm.'"

---

footnote in original omitted). Because Forman does not allege any facts indicating that Secretary Perry is a "corrupt official[]" who is enriched by "corrupted taxpayer funds," this Court does not construe this allegation to allege a claim against Secretary Perry. Id. (capitalization and emphasis omitted).

[9] Forman also claims "[t]he state of South Dakota refuses to take law enforcement misconduct seriously." Doc. 1 ¶ 26. However, Forman has not alleged that he filed a complaint with the State of South Dakota or the SDDPS alleging misconduct by Officer Bonnema. See generally id. He also has not alleged any facts indicating that the SDDPS is the agency responsible for investigating law enforcement misconduct. Id.

Pessima v. Allen, 4:19-CV-04200-RAL, 2021 WL 1691143, at *4 (D.S.D. Apr. 29, 2021) (quoting Park, 205 F.3d at 1037). "[I]t is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury [is] certainly impending.'" Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc., 528 U.S. 167, 190 (2000) (second alteration in original) (citation omitted).

Here, Forman does not allege sufficient facts to show a threatened injury is certainly impending nor has he shown that he will face immediate irreparable injuries or any injuries that would not be adequately remedied by law. See generally Doc. 1. Secretary Perry argues that he "has no relationship to the City of Brookings, which is a municipal entity, or any of its officers, agents, or employees, including but not limited to Seth Bonnema." Doc. 8 at 2. Forman does not dispute that the City of Brookings and Officer Bonnema are not employed by the SDDPS, but he claims that there is a financial connection between SDDPS, the BPD, and MADD because the BPD receives funding and MADD is present at SDDPS meetings. Doc. 12 ¶ 3. The fact that Forman believes SDDPS is somehow involved with the distribution of grant funding, and that some of that funding may be distributed to the City of Brookings, does not show that a threatened injury is certainly impending. Thus, Forman has not sufficiently alleged standing for his civil conspiracy claims for injunctive relief against Secretary Perry.[10]

---

[10] In Forman's Complaint he generally seeks "a preliminary injunction & a permanent injunction." Doc. 1 ¶ 44. It appears that Forman seeks to use his motion for preliminary injunction to clarify the injunctive relief he requests and explain some of his allegations. Id. ¶¶ 36 n.13, 37 n.14, 44. The only relief he seeks against the SDDPS and Secretary Perry in his motion for preliminary injunction relates to his claim of misuse of funding because he asks that "[t]he South Dakota Department of Public Safety /Department of Highway Safety, & Robert Perry be barred from giving any traffic related grant assistance whether financial or other assets to the City of Brookings & BPD." Doc. 15 ¶ H. Because he has not alleged a personal injury, these claims appear to be seeking relief based on his standing as a taxpayer, which this Court finds is insufficient to allege standing. See infra at 21–22.

### b.    Claims for Misuse of State and Federal Funds

Liberally construing Forman's Complaint, he alleges that the SDDPS misused federal and state taxpayer funds.  Doc. 1 at 13.  Because Forman has not alleged that he was personally injured based on this alleged misuse of federal and state funds, this Court liberally construes his Complaint to allege standing as a taxpayer.  "Generally, '[a]bsent special circumstances . . . standing cannot be based on a plaintiff's mere status as a taxpayer."  Huizenga v. Indep. Sch. Dist. No. 11, 44 F.4th 806, 809–10 (8th Cir. 2022) (per curiam) (alterations in original) (quoting Az. Christian Sch. Tuition Org. v. Winn, 563 U.S. 125, 134 (2011)).  "The same principles limiting federal taxpayer challenges are 'equally true when a state Act is assailed.'"  Id. (quoting DaimlerChrysler Corp., 547 U.S. at 345).  Although the Supreme Court has recognized a narrow exception to permit taxpayer standing to challenge exercises of congressional power in Flast v. Cohen, 392 U.S. 83, 102–03 (1968), "[t]he [Supreme] Court and [the Eighth Circuit Court of Appeals] have never applied Flast to any alleged spending violations except those invoking the Establishment Clause."  Huizenga, 44 F.4th at 810.

Forman alleges that the Defendants misused federal and state taxpayer funds, but he does not clearly allege how the misuse involved an exercise of congressional power.  See generally Doc. 1.  Although it is unclear under what cause of action Forman seeks to bring his claim,[11] it is quite clear that Forman is not alleging his claim under the Establishment Clause, and Forman has

---

[11] The False Claims Act allows a private party to sue on behalf of the Government for knowing presentment of false or fraudulent claims for payment or approval to the Government.  31 U.S.C. § 3729.  This Court does not construe Forman's Complaint to allege a claim under the False Claims Act because "[u]nder the False Claims Act, actions by private actors can only be brought as a *qui tam* action."  Horde v. Elliot, Case No. 17-cv-800 (WMW/SER), 2018 WL 987683, at *14 (D. Minn. Jan. 9, 2018).  Forman did not file his Complaint as a *qui tam* action.  See 31 U.S.C. § 3730(b)(2) (outlining the procedural requirements to file a *qui tam* action).  See also Doc. 23 at 13–15 (Defendants City of Brookings and Officer Bonnema arguing that Forman did not properly file a cause of action under the False Claims Act and even if he had, he would fail to state a claim).

not cited to any authority supporting taxpayer standing for other causes of action. Thus, Forman

has not alleged taxpayer standing for alleged misuse of state and federal taxpayer funds.

### 3.    Civil Conspiracy Claim

Even if Forman does have standing to allege a conspiracy claim against Secretary Perry,

he has failed to state a claim upon which relief may be granted. Liberally construing Forman's

Complaint, he alleges a claim against Secretary Perry for conspiracy under 42 U.S.C. §§ 1983

and 1985. Doc. 1. A civil conspiracy claim under § 1983 requires that the plaintiff show: "(1)

two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object

or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5)

damages as the proximate result of the conspiracy." Livers v Schenck, 700 F.3d 340, 360–61

(8th Cir. 2012) (quoting In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 113

F.3d 1484, 1498 (8th Cir. 1997)). Because Forman does not specify what section his § 1985

claim falls under, this Court liberally construes his claim to fall under § 1985(3), "Depriving

persons of rights or privileges." 42 U.S.C. § 1985(3). A claim under § 1985(3) requires the

plaintiff to show:

> (1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to
> deprive [him] either directly or indirectly of [his] civil rights; (3) that a conspirator
> did an act in furtherance of the object of the conspiracy; and (4) damages, shown
> by demonstrating either injury to person or property or the deprivation of a civil
> right.

Mettler v. Whitledge, 165 F.3d 1197, 1206 (8th Cir. 1999).

Secretary Perry argues Forman has not alleged that he personally engaged in any conduct

that resulted in a constitutional violation, stating "Perry, as Secretary of the Department of Public

Safety, has no relationship to the City of Brookings . . . . There is no allegation that Perry has

any relationship or control over MADD other than the allegation that he is 'guilty by association.'" Doc. 8 at 2–3.

> Forman solely alleges that
>
> Perry is liable as the state is immune from suit, thus he is the proper party to be sued. The South Dakota Department of Public Safety & their Highway Safety subdivision is responsible for distributing the grant funds throughout the state & to the City of Brookings PD. Furthermore MADD is heavily entangled with the DPS & Robert Perry is guilty by association; based on his association with MADD, the City of Brookings & Seth Bonnema.

Doc. 1 ¶ 14. Forman claims that Secretary Perry is guilty by association, but he does not allege any acts that Secretary Perry personally committed that violated his constitutional rights. Also, Forman's vague allegations of financial entanglement and intertwinement between Officer Bonnema, the City of Brookings, the State of South Dakota, and MADD are insufficient to show a meeting of the minds. Thus, Forman has failed to state a civil conspiracy claim against Secretary Perry.

**B.      The City of Brookings and Officer Bonnema's Motion to Dismiss (Doc. 22)**

Forman sues Officer Bonnema in his individual and official capacities, and he alleges liability against the City of Brookings under Monell v. Department of Social Services, 436 U.S. 658 (1978). Doc. 1 ¶¶ 2, 3. As related to the City of Brookings and Officer Bonnema, this Court liberally construes Forman's Complaint to allege the following claims: (1) First, Fourth, and Fourteenth Amendment claims and civil conspiracy claims against Officer Bonnema in his individual and official capacities and the City of Brookings for an allegedly illegal traffic stop on July 21, 2022; (2) claims for fraudulent use of state, federal, and municipal taxpayer dollars against the City of Brookings; and (3) First, Fourth, and Fourteenth Amendment claims and civil

conspiracy claims against the City of Brookings[12] because BPD officers followed Forman in June 2023.[13]  See generally id.  The City of Brookings and Officer Bonnema move to dismiss Forman's claims against them under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure because "Forman lacks standing under Article III of the U.S. Constitution" and "Forman fails to state a claim upon which relief may be granted."[14]  Doc. 23 at 1–2; see also Doc. 22.

### 1.    Standing

The City of Brookings and Officer Bonnema's Motion to Dismiss argues that Forman has alleged insufficient facts for this Court to have subject matter jurisdiction.  Doc. 23 at 2–3.  Thus, this Court construes the City of Brookings and Officer Bonnema's Motion to Dismiss to be asserting a facial challenge.  Because "[t]he standing inquiry is both plaintiff-specific and claim-

---

[12] Because Forman does not claim that Officer Bonnema was one of the officers involved with following him and targeting him in 2023, this Court does not construe Forman's Complaint to allege First, Fourth, and Fourteenth Amendment claims and civil conspiracy claims against Officer Bonnema for the conduct in 2023.  Doc. 1 ¶¶ 38–43.

[13] Forman also mentions how he filed a separate suit against BPD Officers Damian Weets and Sean Doremus, along with other officers, because they assaulted him.  Doc. 1 ¶ 38.  Forman appears to allege that as merely background context for his history with the BPD and its officers, not as a separate claim.  Doc. 25 ¶ 17.
    In Forman's response to the City of Brookings and Officer Bonnema's Motion to Dismiss, Forman adds additional facts about Officer Bonnema being potentially on leave of some sort as a cover up story so that the BPD could say they suspended him "[i]f some bad caselaw came out against Bonnema & the City of Brookings" due to Forman's lawsuits, which Forman claims would jeopardize the BPD's CALEA certification application.  Id. ¶¶ 24–25.  Forman claims that this conduct is "ripping off the tax-payers more than ever."  Id. at 18 (capitalization and emphasis in original omitted).  Forman does not appear to use this information to add additional claims against Officer Bonnema and the City of Brookings, and even if he did it is unclear what claims.  Further, this Court would likely lack standing over any such claims regarding the use of taxpayer dollars as set forth in this opinion.  See infra at 27–28.

[14] If any of Forman's claims survive the motion to dismiss, the City of Brookings and Officer Bonnema request that this Court stay the claims that overlap with Forman's prior case until a ruling has been entered in Forman's prior case, Forman v. South Dakota DCI, 4:23-CV-4208-ECS (D.S.D.).  Doc. 23 at 2.  However, between the time Defendants City of Brookings and Officer Bonnema filed their motion to dismiss and the time this Court entered an order ruling on the motion to dismiss, Forman's prior case has been dismissed.  Forman, 4:23-CV-4208-ECS Docs. 55, 56.  Thus, this request is moot.

specific[,] . . . a reviewing court must determine whether each particular plaintiff is entitled to have a federal court adjudicate each particular claim that he asserts." Pagan v. Calderon, 448 F.3d 16, 26 (1st Cir. 2006) (citing Allen v. Wright, 468 U.S. 737, 752 (1984)). For each claim, Forman must show that he suffered an injury in fact, which was fairly traceable to Defendants' actions, and his injury is likely to be redressed by a favorable decision. Curtis Lumber Co., 618 F.3d at 770 (citing Lujan, 504 U.S. at 560–61). Defendants City of Brookings and Officer Bonnema argue that "Forman's Complaint is premised on conduct that did not injure him under the Constitution's standing requirements, including speculative future harm, and alleged harms to other, unidentified third parties." Doc. 23 at 8. They further argue that he lacks standing because "Forman's Complaint fails to establish that the challenged conduct, namely the City of Brookings's alleged funding activities, are 'fairly traceable' to his alleged occurrences." Id. This Court now separately reviews whether standing is proper over each of Forman's claims against the City of Brookings and Officer Bonnema.

a.    **Forman's First, Fourth, and Fourteenth Amendment Claims and Civil Conspiracy Claims for the Traffic Stop in 2022**

Forman claims that he suffered an injury of an allegedly illegal traffic stop on July 21, 2022, because of alleged violations of his civil rights under the First, Fourth, and Fourteenth Amendments. Doc. 1 ¶¶ 11, 13. He also claims that the conspiracy between Officer Bonnema, the City of Brookings, MADD, and the SDDPS caused the illegal stop in July of 2022. Id. ¶ 12. Thus, Forman has sufficiently alleged an injury in fact for standing for his claims for money damages.

To the extent that Forman seeks injunctive relief on his First, Fourth, and Fourteenth Amendment illegal stop claims and his claims for civil conspiracy with MADD and the SDDPS, he must also show standing. Park, 205 F.3d at 1037. Defendants argue that "Forman's deeming

himself a representative of the public interest and speculation he may be pulled over again someday because of drunk driving prevention and enforcement efforts cannot establish standing to sue." Doc. 23 at 12.  To show an injury in fact for a claim for injunctive relief, the plaintiff must show that he faces a threat of ongoing or future harm and a real and immediate threat of injury.  Park, 205 F.3d at 1037.  As this Court recounted, the Supreme Court when ruling on standing for a claim for injunctive relief required that the plaintiff

> would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation, or for questioning, or (2) that the City ordered or authorized police officers to act in such manner.

461 U.S. at 105–06.

Here, at this stage in the litigation, taking all of Forman's claims as true, he alleged that he is likely to continue driving through the BPD's jurisdiction and have other encounters with the BPD.  Doc. 1 ¶ 24.  Forman alleges that the BPD has an "unofficial policy & custom of allowing BPD officers such as Bonnema to lie & illegally detain individuals in an effort to increase their DUI & traffic enforcement statistics." Id. ¶ 13.  He also argues that "[t]he practice of detaining people for made up violations should be also considered a custom or policy of the City of Brookings." Id. ¶ 28.  Thus, at this stage, Forman has sufficiently alleged an injury in fact for his First, Fourth, and Fourteenth Amendment claims and the civil conspiracy claims all against the City of Brookings and Officer Bonnema for injunctive relief related to the July 2022 traffic stop.

This Court next considers whether Forman has met the second and third elements of standing: the injury is fairly traceable to Defendants' actions and the injury is redressable by the relief requested.  He has shown that the injury was traceable to Defendants City of Brookings

and Officer Bonnema's actions because he claims that the allegedly illegal seizure occurred by Officer Bonnema and as part of the illegal incentive programs encouraged by the BPD. See generally Doc. 1. He also claims that a civil conspiracy caused the allegedly illegal seizure. Id. He requests damages and injunctive relief, which he seeks to remedy his alleged injury. Id. ¶ 44. Thus, this Court has standing over his First, Fourth, and Fourteenth Amendment claims against Officer Bonnema and the City of Brookings and claims for civil conspiracy against Officer Bonnema and the City of Brookings related to the allegedly illegal traffic stop in 2022.

### b.   Fraudulent Use of State, Federal, and Municipal Taxpayer Dollars Against the City of Brookings

As to Forman's claim that the City of Brookings committed fraud by misusing taxpayer funds and fraud in their grant applications by including data for false stops, he has failed to state any injury that he personally suffered because of the BPD's alleged fraud. See generally Doc. 1. Forman also does not appear to allege that he suffered a personal injury because of the City of Brookings's allegedly fraudulent use of federal funds. See generally id. This Court also does not construe Forman's complaint to allege a claim under the False Claims Act. See supra at 21 n.11. Defendants also argue that Forman has not shown a causal connection between "the City of Brookings's alleged funding procurement and his alleged injuries." Doc. 23 at 12. Thus, Forman does not appear to allege standing over a claim for misuse of state and federal taxpayer funds.

Forman also claims that Officer Bonnema and "[o]ther BPD officers us[ed] the department resources to target [him] on the taxpayer dollar & time." Doc. 1 ¶ 13. Municipal taxpayer standing is an exception to the general rule against taxpayer standing. Huizenga v. Indep. Sch. Dist. No. 11, 149 F.4th 990, 995 (8th Cir. 2025). "Because municipal taxpayers have a 'direct and immediate' interest in municipal expenditures, they 'may sue to enjoin an illegal

use of the moneys of a municipal corporation.'" Id. (quoting Frothingham v. Mellon, 262 U.S. 447, 486 (1923)). "To have municipal taxpayer standing, a plaintiff (1) 'must actually be a taxpayer of the municipality that [he] wishes to sue' and (2) 'must establish that the municipality has spent tax revenues on the allegedly illegal action.'" Id. (quoting Huizenga, 44 F.4th at 812).

Here, Forman claims that the City of Brookings and the BPD used taxpayer funds on illegal activity, which included harassing him. Doc. 1 ¶¶ 13, 29; Doc. 25 ¶¶ 11, 22. Although Forman claims that he resides in the City of Brookings, he does not clearly allege that he is a taxpayer of the City of Brookings. See generally Doc. 1. Thus, he has failed to meet the elements of taxpayer standing for his claim that the City of Brookings misused taxpayer funds.

### c. First, Fourth, and Fourteenth Amendment Claims and Civil Conspiracy Claims Against the City of Brookings for Following by BPD Officers in 2023

Forman claims that he suffered an injury because he was followed or targeted by BPD officers on three nights in June of 2023. Doc. 1 ¶¶ 40–43. Forman does not allege that he was ever stopped during this time period, instead, he merely alleges that he was followed by police officers on public roadways. See generally id. But he does allege that he was "being targeted & singled out." Id. ¶ 42. Thus, Forman has alleged that he suffered an injury in fact by a very thin margin.

As to Forman's claims for injunctive relief relating to June 2023, Forman has not shown an injury sufficient to establish standing. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." Harmon v. City of Kansas City, 197 F.3d 321, 327 (8th Cir. 1999) (citations omitted). An "equitable remedy [of an injunction] is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any

real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" Lyons, 461 U.S. at 111 (quoting O'Shea, 414 U.S. at 502).

Forman claims that he is likely to have other encounters with police officers.  Doc. 1 ¶ 24.  Although "Forman pleads an unofficial policy & custom of the BPD targeting & harassing Forman for no retirement [sic] law enforcement function," id. ¶ 43, he does not allege any facts showing continuing adverse effects.  Forman does not allege that any other harassing behaviors occurred between June 2023 and the time he filed his complaint in January of 2025.  See generally id.  Nor has he alleged any facts indicating that he is likely to be wrongfully targeted again.[15]

### 2.    Preclusive Effect of Forman's Prior Case

Defendants the City of Brookings and Officer Bonnema move to dismiss Forman's claims related to the July 21, 2022 traffic stop.  Doc. 23 at 17.  On February 21, 2025, when Defendants the City of Brookings and Officer Bonnema filed their motion to dismiss, a final judgment had not yet been entered in Forman's prior case.  See generally id.  This Court takes judicial notice that on March 31, 2025, a final judgment was entered in Forman's prior case. Forman, 4:23-CV-04208-ECS, Docs. 55, 56.  See United States v. Jackson, 640 F.2d 614, 617 (8th Cir. 1981) (A court can take judicial notice of "its own records and files, and facts which are part of its public records.  Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it." (citation modified)).

---

[15] In his reply brief to his motion for preliminary injunction, Forman describes an interaction he had with BPD Officer Robert Bowden that occurred well after he filed his Complaint.  Doc. 29 ¶ 6.  Forman claims that Officer Bowden "commenced a detention of the plaintiff under no authorization."  Id.  The Eighth Circuit held that incidents after the filing of the complaint were not relevant to show standing because the plaintiff's burden was to show "at the time [he] filed [his] suit . . . there was a real and immediate threat that [he] would again be subjected" to the unconstitutional action.  Park, 205 F.3d at 1037.  Further, Forman also has not moved to supplement his Complaint to add such facts.  See Fed. R. Civ. P. 15(d).

The fact that a final judgment was not entered until after the motion to dismiss was filed does not preclude this Court from considering res judicata because "[a] court may dismiss a case based on *res judicata sua sponte*." Emerald Pointe, LLC v. Taney Cnty., 78 F.4th 428, 432 (8th Cir. 2023). A sua sponte dismissal for res judicata "is fully consistent with the policies underlying *res judicata*: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." Id. at 432–33 (quoting Arizona v. California, 530 U.S. 392, 412 (2000)). Thus, this Court considers whether Forman's remaining 2022 claims against the City of Brookings and Officer Bonnema for violation of his rights under the First, Fourth, and Fourteenth Amendments and for civil conspiracy with MADD and SDDPS are barred under res judicata.

Res judicata precludes relitigation of the same claims when "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." Costner v. URS Consultants, Inc., 153 F.3d 667, 673 (8th Cir. 1998) (citations omitted). "Final judgment on the merits precludes relitigation of a claim on any ground raised before or any grounds which could have been raised in the prior action." Poe v. John Deere Co., 695 F.2d 1103, 1105 (8th Cir. 1982); see also Allen v. McCurry, 449 U.S. 90, 94 (1980) (citing Cromwell v. Cnty. of Sac, 945 U.S. 351, 352 (1876)). "[W]hether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate." Murphy v. Jones, 877 F.2d 682, 684–85 (8th Cir. 1989) (citations omitted); see also Healy v. Fox, 46 F.4th 739, 744 (8th Cir. 2022) ("Whether causes of action are identical depends on whether the wrong sought to

be redressed is the same in both actions" (quoting <u>Hicks v. O'Meara</u>, 31 F.3d 744, 746 (8th Cir. 1994)).

The Supreme Court has also recognized that "if a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised." <u>Arizona</u>, 530 U.S. at 412. This is known as issue preclusion or collateral estoppel. <u>Fofana v. Mayorkas</u>, 4 F.4th 668, 670 (8th Cir. 2021).

> In the Eighth Circuit, issue preclusion has five elements: "(1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment."

<u>Robinette v. Jones</u>, 476 F.3d 585, 589 (8th Cir. 2007) (quoting <u>Anderson v. Genuine Parts Co.</u>, 128 F.3d 1267, 1273 (8th Cir. 1997)).

In the order granting summary judgment in Forman's prior case, this Court held that during the July 21, 2022 traffic stop "Officer Bonnema did not unreasonably intrude upon the privacy and liberty interests protected by the Fourth Amendment," and thus, summary judgment was granted in favor of Officer Bonnema and against Forman. 4:23-CV-04208-ECS Doc. 55 at 9–12. This Court also held that the City of Brookings was entitled to summary judgment on the claims related to when Forman was stopped by Officer Bonnema and when BPD officers allegedly beat up Forman. <u>See generally id.</u> (describing the dismissal of claims against BPD officers and granting summary judgment in favor of the City of Brookings because the BPD officers did not violate Forman's constitutional rights).

Forman's first lawsuit resulted in a final judgment on his Fourth Amendment claim for an allegedly illegal stop on July 21, 2022. <u>Id.</u> This Court had proper jurisdiction over his claims

under § 1983. Id. Both Forman's current and former lawsuit involved Forman, the City of

Brookings, and Officer Bonnema. The current and former claims focus on the same cause of

action: an allegedly illegal stop by Officer Bonnema in 2022. Id.; Doc. 1. Because Forman's

First, Fourth, and Fourteenth Amendment claims for money damages and injunctive relief related

to the 2022 conduct against the City of Brookings and Officer Bonnema and were brought or

could have been brought in Forman's prior action, they are barred by res judicata. Forman did

not appeal this Court's order granting summary judgment and dismissing his claims with

prejudice. Thus, Forman's First, Fourth, and Fourteenth Amendment claims for an illegal stop

on July 21, 2022, are dismissed under Rule 12(b)(6).[16]

      Forman also sues the City of Brookings and Officer Bonnema for civil conspiracy claims

under §§ 1983 and 1985. Doc. 1. Forman alleges that he did not learn of the alleged conspiracy

between the BPD, Officer Bonnema, MADD, and SDDPS until MADD gave Officer Bonnema

an award on May 2, 2024. Id. ¶ 12. However, because the injury that Forman suffered from the

alleged conspiracy was an allegedly illegal traffic stop by Officer Bonnema in July 2022, his

conspiracy claims relate to the same operative fact and cause of action, such that his claims could

have been brought in his prior case. Learning of new facts at a later date does not necessarily

preclude application of res judicata. Healy, 46 F.4th at 746 ("Whether a party 'had a full and fair

opportunity to litigate is not determined by whether it is still possible to find additional evidence

concerning the claim. [N]ewly-discovered evidence does not provide an exception to res

judicata.'" (alteration in original) (quoting Est. of Johnson v. Weber, 898 N.W.2d 718, 733 (S.D.

2017))); Lane v. Peterson, 899 F.2d 737, 744 (8th Cir. 1990) ("[R]eliance . . . on different

substantive law and new legal theories does not preclude the operation of res judicata. . . .

---

[16] This Court's ruling does not preclude Forman from seeking injunctive relief if he is subject to an illegal arrest by BPD officers in the future.

[W]here a plaintiff fashions a new theory of recovery or cites a new body of law that was arguably violated by a defendant's conduct, res judicata will still bar the second claim if it is based on the same nucleus of operative facts as the prior claim.").

Even if Forman's civil conspiracy claims are not barred by res judicata, Forman has failed to state a civil conspiracy claim under §§ 1983 or 1985. As this Court previously explained, to allege a claim under §§ 1983 and 1985, Forman must allege that he suffered damages. See supra at 22–23. This Court already determined in the prior case that Officer Bonnema's actions did not cause a violation of his constitutional rights, and Forman did not suffer any damages. Further, Forman has not clearly alleged any facts showing an agreement or meeting of the minds between MADD, SDDPS, the City of Brookings, and Officer Bonnema. See generally Doc. 1. Thus, Forman's claims against the City of Brookings and Officer Bonnema under the First, Fourth, and Fourteenth Amendments and for civil conspiracy are dismissed.

### 3.    Claims for Conduct in 2023[17]

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). "A municipality may be liable under § 1983 when an official municipal

---

[17] Defendants City of Brookings and Officer Bonnema argue that the conduct in 2023 "also existed at the time Forman filed his lawsuit related to the July 21, 2022 incident. Forman's Complaint does not allege any 'new' damages that he could not have raised in Forman v. South Dakota DCI, et. al., 4:23-cv-4208, which was filed on December 6, 2023." Doc. 23 at 4. Because it is arguable that the 2023 claims are not based on the same factual predicate or same nucleus of operative facts, this Court finds that it is more appropriate to address the 2023 claims on their merits. See Murphy, 877 F.2d at 684–85 ("[W]hether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate."). Regardless, Forman has failed to state a claim for the reasons stated in this opinion.

policy or custom caused a violation of a plaintiff's [constitutional] rights." Russell v. Hennepin Cnty., 420 F.3d 841, 846 (8th Cir. 2005) (citation omitted). "Before a municipality can be held liable, however, there must be an unconstitutional act by a municipal employee." Id. (citation omitted).

### a.  First Amendment

It is unclear if Forman is attempting to allege a First Amendment violation when he alleges that to the BPD "personal scores are more important to settle" in relation to his 2023 incident. Doc. 1 ¶ 38. In the beginning of Forman's Complaint, when describing the events around the 2022 incident, he claims that the City of Brookings "allows their officers to use their badge for personal gain & to target certain individuals in the community they do not like; in an attempt to squelch free speech & unlawfully punish with their authority." Id. ¶ 13. Even if this Court were to liberally construe a First Amendment claim, the City of Brookings argues that "[a]lthough Forman alleges that these incidents evince the Brookings Police Department is 'targeting & harassing' him, his bare allegations do not show any constitutional, statutory, or common law violation." Doc. 23 at 17. A First Amendment retaliation claim requires that the plaintiff show: "(1) that he engaged in a protected activity, (2) that the defendant's actions caused an injury to the plaintiffs that would chill a person of ordinary firmness from continuing to engage in the activity, and (3) that a causal connection exists between the retaliatory animus and the injury." Scott v. Tempelmeyer, 867 F.3d 1067, 1070 (8th Cir. 2017). Because Forman does not allege that a causal connection exists between him engaging in a protected activity, i.e. filing a lawsuit, and BPD officers following him, he has failed to state a First Amendment claim. Thus, if this Court were to liberally construe Forman's Complaint to allege a First Amendment

retaliation claim, it would be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

### b.    Fourth Amendment

Forman's Complaint could be liberally construed to allege a Fourth Amendment claim for the 2023 conduct. Doc. 1 ¶¶ 41–43. The Fourth Amendment guarantees the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. Defendants the City of Brookings and Officer Bonnema argue that "Forman alleges three occurrences involving Brookings Police Officers where he was not arrested or stopped. Therefore, he was not 'searched' or 'seized' under the Fourth Amendment, much less unreasonably." Doc. 23 at 17. This Court agrees with Defendants' arguments. Forman has not alleged that he was searched or seized. Thus, his Fourth Amendment claim fails to state a claim upon which relief may be granted and is dismissed without prejudice under Rule 12(b)(6).

### c.    Fourteenth Amendment

Defendants argue that "Forman's allegations do not establish that his equal protection or due process rights, for example, were violated under the Fourteenth Amendment." Doc. 23 at 17. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Smith v. McKinney, 954 F.3d 1075, 1079 (8th Cir. 2020) (quoting Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). Because Forman does not allege he was deprived of his life, liberty, or property because of the June 2023 conspiracy, he has failed to allege a deprivation under the Fourteenth Amendment due process clause. Doc. 1 ¶¶ 41–43. Deprivation of rights under the equal protection clause occur when a plaintiff is treated differently than similarly situated individuals. McDonald v. City of St. Paul, 679 F.3d 698, 705

(8th Cir. 2012). Although Forman claims he was "targeted & singled out," he has not alleged

any facts showing that he was treated differently than similarly situated individuals. Doc. 1 ¶ 42;

see also id. ¶¶ 41, 43. Thus, Forman's Fourteenth Amendment claim for the incidents in 2023 is

dismissed without prejudice under Rule 12(b)(6) for failure to state a claim upon which relief

may be granted.

### d.    Conspiracy

This Court liberally construes Forman's Complaint to allege a civil conspiracy under

§§ 1983 and 1985(3) for conduct occurring in June 2023. The City of Brookings argues

"[a]lthough Forman alleges that these incidents evince the Brookings Police Department is

'targeting & harassing' him, his bare allegations do not show any constitutional, statutory, or

common law violation." Doc. 23 at 17.

A plaintiff is "required to prove a deprivation of a constitutional right or privilege in

order to prevail on a § 1983 civil conspiracy claim." Henry v. Johnson, 950 F.3d 1005, 1015

(8th Cir. 2020) (quoting Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999)). This Court held

that Forman failed to allege a claim under the First, Fourth, and Fourteenth Amendments related

to the BPD's conduct in 2023. See supra at 34–36. Thus, Forman has failed to allege a civil

conspiracy claim under § 1983.

A § 1985(3) claim requires "damages, shown by demonstrating either injury to person or

property or the deprivation of a civil right." Mettler, 165 F.3d at 1206. Forman has not alleged

he suffered an injury to his person or property. Doc. 1 ¶¶ 41–43. This Court held in dismissing

Forman's First, Fourth, and Fourteenth Amendment claims that he had not alleged sufficient

facts to show that he suffered a deprivation of a civil right. See supra at 34–36. Thus, Forman's

§ 1985(3) claim for conduct in 2023 is dismissed without prejudice under Rule 12(b)(6).

### 4.    Request for Attorney's Fees Under 42 U.S.C. § 1988

Defendants the City of Brookings and Officer Bonnema request that this Court order Forman to pay their attorney's fees under 42 U.S.C. § 1988. Doc. 23 at 18–21. Forman opposes this request. Doc. 25 ¶ 22.

Section 1988 permits award of reasonable attorney's fees to the prevailing party for claims arising under §§ 1983 and 1985. 42 U.S.C. § 1988(b). Awarding attorney's fees to the prevailing party under § 1988 is at the Court's discretion. Id. "In enacting § 1988 . . . Congress sought 'to protect defendants from burdensome litigation having no legal or factual basis. Accordingly, § 1988 authorizes a district court to award attorney's fees to a defendant upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." Fox v. Vice, 563 U.S. 826, 833 (2011) (internal citations and quotations omitted). In Hughes v. Rowe, the Supreme Court, when determining whether attorney's fees should be awarded against a *pro se* prisoner plaintiff under § 1988, noted that "[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims. . . . [E]ven if the law or the facts are somewhat questionable or unfavorable at the outset of litigation, a party may have an entirely reasonable ground for bringing suit." 449 U.S. 5, 15 (1980) (per curiam).

This Court recognizes the burden on Defendants to defend multiple suits by the same Plaintiff about some claims that are generally the same as well as Defendants' frustration about Forman's conclusory allegations about improper conduct by Defendants and their counsel. Defendants also argue that Forman admits that his claims are frivolous because he stated that he lacked knowledge about funding or statistics the City of Brookings used for grant applications. Doc. 28 at 3–4. This Court acknowledges that Forman is bringing this lawsuit to "punish" the City of Brookings and to teach the BPD a lesson. Doc. 1 ¶¶ 25–26, 33. But this Court also

weighs these interests with the burden on an unrepresented litigant who is unaware of legal and factual deficiencies. At the time Forman filed his second lawsuit, no substantive order had been entered in his prior case. Thus, Forman was not aware of the factual or legal deficiencies in his claims. Further, this Court can recognize Forman's confusion that led him to believe that the civil conspiracy was a wholly independent claim that must be raised in a separate suit. Thus, this Court does not find that it would be appropriate at this time to order Forman to pay Defendants the City of Brookings and Officer Bonnema's attorney's fees. Defendants City of Brookings and Officer Bonnema's request for attorney's fees under § 1988 is denied.

### C.    MADD's Motion to Dismiss (Doc. 32)

Forman sues MADD under § 1983 as a joint actor with the State of South Dakota and the City of Brookings. Doc. 1 ¶ 15. According to Forman, MADD is "a 'non-profit' corporation entangled in government affairs, they are sued as a state actor & a government agency." Id. ¶ 6. This Court liberally construes Forman's complaint to allege claims under §§ 1983 and 1985 for civil conspiracy to violate his Fourth and Fourteenth Amendment rights and a claim for fraud, misuse, and abuse of taxpayer funded grants. Id. ¶¶ 20, 29.

On March 14, 2025, MADD filed a motion to dismiss Forman's Complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6). Doc. 32. Under this Court's Local Rule 7.1(B), "[o]n or before 21 calendar days after service of a motion and brief, unless otherwise specifically ordered by the court, all opposing parties must serve and file a responsive brief containing opposing legal arguments and authorities in support thereof." D.S.D. Civ. LR 7.1(B). Forman has not filed a responsive brief to MADD's motion to dismiss, and the time to do so has expired. *Pro se* parties are not exempt from complying with the Federal Rules of Civil Procedure, local rules, and court orders. Bennett v. Dr. Pepper/Seven Up, Inc., 295 F.3d 805,

808 (8th Cir. 2002) (citing Carman v. Treat, 7 F.3d 1379, 1381 (8th Cir. 1993)).  Forman is very familiar with the legal process in federal court, and he timely filed responsive briefs to Secretary Perry, the City of Brookings, and Officer Bonnema's motions to dismiss.  See Docs. 12, 25. Thus, this Court will not sua sponte extend Forman's time to respond to the motion.  This Court now considers the merits of MADD's motion to dismiss.  Country Club Ests., L.L.C. v. Town of Loma Linda, 213 F.3d 1001, 1006 (8th Cir. 2000) ("[T]he absence of a response to a dispositive motion does not relieve the Court of its duty to consider the motion on the merits.").

### 1.    Motion to Dismiss Under Rule 12(b)(1)

MADD moves to dismiss under Rule 12(b)(1) "because Plaintiff cannot meet the required elements to establish that he has standing to sue." Doc. 33 at 9.  Although MADD labels its challenge as a factual challenge, MADD raises both factual and facial arguments.  Id. at 9–12 (arguing that the Complaint has not alleged an injury in fact based on the claims in the complaint and arguing that additional facts confirm that MADD was not involved in the alleged conspiracy in 2022).  This Court previously explained that when ruling on a facial attack, courts are limited to the pleadings to determine whether the plaintiff has sufficiently pleaded a basis for subject matter jurisdiction, see supra at 14, but courts are not limited to solely the pleading when considering a factual attack to subject matter jurisdiction.

"A factual attack occurs 'when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction.'" Davis v. Anthony, Inc., 886 F.3d 674, 679 (8th Cir. 2018) (quoting Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009)).  "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6 (citations omitted).  When a party makes a factual attack on a court's subject matter jurisdiction, "because 'its very power to hear

the case' is at issue, 'the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case,' without transforming the motion into one for summary judgment." Spearfish Evans-Tonn Ditch Co. v. Horizon Invs., LLC, 715 F. Supp. 3d 1219, 1224 (D.S.D. 2024) (quoting Osborn, 918 F.2d at 730).

### a.    Claim for Civil Conspiracy

Liberally construing Forman's conspiracy claim, he alleges that MADD, through providing incentive rewards to police officers throughout the nation based on DUI arrests, conspired with the BPD to conduct illegal arrests to increase the DUI statistics, which resulted in Forman being illegally stopped in July of 2022.  Doc. 1 ¶¶ 6 n.1, 29.  MADD alleges that Forman did not suffer an injury because he was not arrested nor was he cited for a DUI.  Doc. 33 at 10.  But, as this Court previously explained, an illegal traffic stop may constitute an injury. See supra at 16.  Thus, to the extent that MADD alleges a facial challenge arguing that Forman has insufficiently alleged an injury in fact, when taking all of Forman's factual allegations as true, this Court cannot determine at this stage that Forman has not suffered an injury in fact.

MADD argues that even if Forman suffered an injury, it is not fairly traceable to MADD's actions, and MADD appears to allege that traceability has not been met as both a facial and factual challenge.  Doc. 33 at 10–11.  MADD's argument is largely that (1) Officer Bonnema's actions of pulling Forman over are solely the officer's independent actions and are not attributable to MADD and (2) if the actions could be attributed to MADD, doing so is improper because MADD did not provide incentive awards in South Dakota at the time that Officer Bonnema pulled over Forman.  Id.

Forman clearly indicates that he believes a conspiracy existed between MADD, the State of South Dakota, the City of Brookings, and Officer Bonnema to incentivize illegal arrests to

increase statistics.  Doc. 1 ¶¶ 6 n.1, 29.  However, there are no allegations in Forman's

Complaint indicating that MADD offered the incentive programs for arrests in South Dakota in

2022.  See generally id.; see also Doc. 33 at 8–10 (arguing that MADD did not provide officer

recognition in South Dakota for arrests in 2022).  Instead, Forman clearly alleges that the award

given to Officer Bonnema for arrests in 2022 was provided by the South Dakota Municipal

League's Police Chief's & Sheriff Association, which he does not allege has any affiliation with

MADD.  Doc. 1 ¶ 33 n.12.  Forman also clearly indicates that Officer Bonnema did not receive

an award from MADD until 2024, which was awarded for arrests the officer made in 2023.  Id.

¶¶ 16, 33 n.12; see also Doc. 1-1 at 2 (describing that awards given by MADD in 2024 to

nominees, including Officer Bonnema, were for "significant contribution in 2023 to reduce

recreational vehicle alcohol and/or drug impaired operation").[18]

　　　Forman also claims that "MADD lobbies for financial & political gains of the [BPD].

MADD lobbies for more DUI grants, more anti-DUI equipment, offers rewards & political

prestige for making DUI arrests regardless of the legitimacy/legality of the arrest or stop."  Doc.

1 ¶ 21.  He claims that MADD "[e]ntangl[ed] itself directly in state & local politics.  MADD is

intertwined in media ,advertisements, [sic] grants, political prestige, lobbying & more.  Plaintiff

asserts MADD is responsible for the illegal detention he suffered at the hands of Bonnema & the

[BPD]."  Id. ¶ 23.  However, merely alleging that MADD attended events or meetings hosted by

the SDDPS or where individuals from the SDDPS or the BPD were present is insufficient to

show a causal connection.  Further, Forman does not specify when MADD began lobbying for

---

[18] Forman also argues that some of the arrests that Officer Bonnema made in 2023 to be nominated for the
award were in violation of the law.  Doc. 1 ¶ 18.  But Forman does not claim that he was arrested in 2023,
and Forman as a *pro se* litigant cannot assert claims on behalf of others for violation of their personal
rights under 28 U.S.C. § 1654.  See Johnson v. Precythe, No. 2:19-cv-00010-PLC, 2019 WL 931925, at
*1 (E.D. Mo. Feb. 26, 2019) (collecting cases).

BPD or engaged in other activities for the BPD.[19]  See generally id.  Thus, because Forman has

failed to sufficiently show that his allegedly illegal arrest was fairly traceable to MADD, this

Court lacks standing over Forman's claims against MADD for civil conspiracy to violate his

Fourth and Fourteenth Amendment rights.

      Although Forman has not sufficiently alleged that MADD's conduct was traceable to the

past actions, this Court must determine whether Forman has sufficiently alleged standing for his

claims for injunctive relief.  Forman alleges that MADD will continue to award officer awards

across the State of South Dakota.  Doc. 1 ¶ 30 ("The more this unlawful entanglement goes on,

the worse it will get.  Plaintiff asserts MADD encourages officers to work extra hours & arrest as

many people as possible encouraging more bad arrests.  MADD also makes wrongful conviction

much more likely."); Id. ¶ 36 ("Throwing in MADD's incentives, trophies, & prizes in the mix &

you have further likelihood of immense harm.  I do fear becoming a victim of another unlawful

detention at the hands of law enforcement in Brookings county & statewide."); Id. ¶ 44 ("MADD

will also be preparing awards for law enforcement across the state in a few months.").

      As this Court previously explained, to allege a standing over a claim for injunctive relief,

the Supreme Court required the plaintiff to have alleged that (1) he would have another

encounter with police and (2) either (a) all police would engage in the unconstitutional excessive

force regardless of the purpose of the encounter or (b) the city ordered or authorized police

officers to act in the unconstitutional manner.  Lyons, 461 U.S. 105–06.  This Court is unaware

of any binding case law translating this analysis over to a claim for injunctive relief against a

---

[19] MADD seeks to factually challenge standing over Forman's claims through their affidavit from MADD
Regional Director Veronica Hawman.  Doc. 34.  In her affidavit, Hawman states that MADD did not
begin awarding officer recognition pins in South Dakota until 2024 based on arrests made in 2023.  Id.
¶ 12.  He further claims that MADD has applied for grant funding in South Dakota, but it has not received
any funding in South Dakota.  Id. ¶ 15.

private company for a civil conspiracy with a city or state. But see Ingram v. Mouser, Case No. 1:19-cv-00308-DCN, 2020 WL 3578302, at *10–11 (D. Idaho July 1, 2020) (finding Lyons applicable to a claim for injunctive relief against a hospital and department of health related to care of minor children). However, an "equitable remedy [of an injunction] is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" Lyons, 461 U.S. at 111 (quoting O'Shea, 414 U.S. at 502). This Court analogizes this standard to the requirements to issue a preliminary injunction under Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109 (8th Cir. 1981) (en banc). The Dataphase factors are: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Id. at 114.

Here, the Court finds that Forman lacks standing to pursue a claim for injunctive relief against MADD. Forman's allegations are simply too attenuated to demonstrate standing for injunctive relief against MADD. There is not, under the alleged facts and this Court's application of basic common sense, any merit to the notion that Forman has suffered or suffers any real or immediate threat from MADD causing him irreparable harm. Likewise, there is no merit to the claim that he will be irreparably harmed by a civil conspiracy between MADD and state and local authorities. Although Forman clearly believes MADD was responsible for his traffic stop in 2022, he has not alleged facts that show that MADD's conduct was somehow traceable to his past encounters with law enforcement. He also did not muster any sort of

response to MADD's motion to dismiss. Accordingly, Forman lacks standing to pursue a claim for injunctive relief against MADD, and his claim for such relief is dismissed.

### b.    Claim for Fraud, Misuse, and Abuse of Taxpayer Funds

Forman claims that "MADD is also guilty of fraud, misuse, & abuse of federal [and state] grant funds." Doc. 1 ¶ 29. He alleges that MADD is engaged in fraud because "they have their nose in all DPS law enforcement meeting affairs sending their representatives for planning & meetings. . . . MADD has joined law enforcement in South Dakota for 'grant training workshops'." Id. Forman appears to allege that "MADD misuses & abuses statistics framing alcohol for crashes it did not cause" so that it can use those statistics in support of their lobbying efforts to lower the legal limit for blood-alcohol content permitted when driving. Id. ¶¶ 30–31.

MADD argues that Forman lacks standing to allege such claims because he "was not involved in an accident, nor does he allege any injury" because of MADD "committing fraud, misuse, and abuse of taxpayer funded grants by framing alcohol for accidents it did not cause."[20] Doc. 33 at 10–11. Because Forman does not allege that he suffered a personal injury, has not filed this action as a qui tam action under the False Claims Act, and has not alleged any other grounds for standing that would permit him to sue for misuse of state and federal grant funds, this Court finds that Forman lacks standing to bring a claim against MADD for fraud, misuse, and abuse of state and federal grant funds.[21]

---

[20] MADD also factually challenges standing based on the fact that "MADD has applied for state grant funding in the state of South Dakota, but it has not been awarded any. It therefore has not received any funding in South Dakota." Doc. 34 ¶ 15.

[21] Because this Court finds that it lacks standing over Forman's claims against MADD under Rule 12(b)(1), this Court does not consider whether, in the alternative, MADD's motions should be granted under Rules 12(b)(2), 12(b)(5), and 12(b)(6). However, because Forman's claims for conduct related to incidents in 2022 may be barred by the statute of limitations, this Court finds that it would not be appropriate to give Forman a chance to amend his Complaint because his facts as alleged fail to establish that a meeting of the minds or mutual agreement to violate his constitutional rights existed, so his civil

IV.    **Claims Against Unknown Defendants**

Forman sued unidentified BPD Officers 1-10 and Jane and/or John Does as defendants. Doc. 1 at 1. This Court separately analyzes whether dismissal of these claims at this time would be appropriate.

Forman has not unambiguously stated what claims he seeks to bring against BPD Officers 1-10, but this Court liberally construes Forman's Complaint to allege claims against these unidentified officers related to when Forman was allegedly followed by BPD officers in 2023. Id. ¶¶ 41–43. Because the issue surrounding whether Forman had sufficiently alleged that an employee of the City of Brookings violated his rights in June of 2023 was essential to showing that the City of Brookings was liable, this Court has already determined that Forman has failed to state a claim against these officers. Courts have recognized that dismissal of a party who did not move for dismissal may be appropriate when controlling issues are identical to parties who did move for dismissal and the plaintiff was given an opportunity to respond. Feng v. Komenda, No. 15-CV-139-LRR, 2016 WL 1465399, at *3 n.4 (N.D. Iowa Apr. 14, 2016) (collecting cases). Forman had an opportunity to respond to the City of Brookings Motion to Dismiss, and he did so. Thus, Forman's claims against BPD Officers 1-10 are dismissed without prejudice.

As to Forman's claims against Jane and/or John Does, Forman has not alleged any facts or claims against these unknown Defendants. Under Federal Rule of Civil Procedure 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." "Jane

---

conspiracy claims would likely fail. Doc. 33 at 12–14. See also Livers, 700 F.3d at 360–61 (citation omitted); Kelly v. City of Omaha, 813 F.3d 1070, 1077–78 (8th Cir. 2016) (citation omitted); Mershon v. Beasley, 994 F.2d 449, 451 (8th Cir. 1980) ("[A] plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor.").

and/or John Does" are solely mentioned in the caption of Forman's Complaint. See id. Further,

Forman is likely unable to conduct discovery to identify these unknown Defendants because

claims against all the identified Defendants have been dismissed. See Munz v. Parr, 758 F.2d

1254, 1257 (8th Cir. 1985) (Dismissal of John Doe defendant "is proper only when it appears

that the true identity of the defendant cannot be learned through discovery or the court's

intervention."). Because Forman has not alleged any claims against Jane and/or John Does, and

discovery is not likely to uncover the identity of Jane and/or John Does, this Court finds that it is

proper to dismiss without prejudice claims against Jane and/or John Does.

## V.    Motion for Preliminary Injunction (Doc. 15)

Forman requests an order requiring the following preliminary injunctive relief: (1) the

BPD or Officer Bonnema be barred from participating in DUI or sobriety checkpoints in

Brookings County, South Dakota; (2) the City of Brookings and BPD be barred from applying

for state and federal highway safety grants and taxpayer grants related to traffic from the

NHTSA; (3) the City of Brookings and BPD return money and assets obtained through grants

from the SDDPS or NHTSA for the 2025 fiscal year; (4) MADD be barred from giving awards

to law enforcement officers in South Dakota or hosting conventions for law enforcement; (5)

MADD be barred from lobbying for or receiving any traffic grants from DPS or giving any

financial aid to the City of Brookings; (6) MADD be barred from participating in SDDPS grant

workshops or meetings; (7) SDDPS and Secretary Perry be barred from giving traffic grant

assistance to the City of Brookings and BPD; (8) the United States Department of Transportation

("USDOT") Inspector General conduct a full audit of grant assistance the BPD has acquired

through the SDDPS; and (9) the USDOT Inspector General conduct a full investigation into

MADD, SDDPS, the City of Brookings, and the BPD "for misuse, abuse, fraud, & other illegal use of federal grant money." Doc. 15 at 2–4.

When a party is dismissed from the lawsuit, a motion for preliminary injunction against that party is generally moot due to a court's inability to issue an injunction against the dismissed party. Orbit Sports LLC v. Taylor, 546 F. Supp. 3d 832, 850 (D. Minn. 2021). Because Forman's Complaint is dismissed, this Court finds that his motion for preliminary injunction, Doc. 15, is denied as moot.

## VI. Conclusion

For these reasons, it is

ORDERED that Forman's Motions for Judicial Notice (Docs. 13, 30, and 35) are granted in part and denied in part. It is further

ORDERED that Secretary Perry's Motion to Dismiss (Doc. 7) is granted, and Forman's claims against Secretary Perry in his individual and official capacities are dismissed without prejudice. It is further

ORDERED that the City of Brookings and Officer Bonnema's Motion to Dismiss (Doc. 22) is granted. Forman's First, Fourth, and Fourteenth Amendment claims and civil conspiracy claims all for a traffic stop in July 2022 are dismissed with prejudice, and Forman's remaining claims against the City of Brookings and Officer Bonnema are dismissed without prejudice. It is further

ORDERED that the City of Brookings and Officer Bonnema's request for attorney's fees (Doc. 22) is denied. It is further

ORDERED that MADD's Motion to Dismiss (Doc. 32) is granted, and Forman's claims against MADD are dismissed without prejudice. It is finally

ORDERED that Forman's Motion for Preliminary Injunction (Doc. 15) is denied as moot.

DATED this ⟶29 day of September, 2025.

BY THE COURT:

_____
ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE